IN THE UNITED STATES DISTRICT COFF THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

In the Matter of the Seizure of:

Funds up to $296,574.04 in Great Southern Bank account number 3708044503, in the name of Ozark Valley Medical Clinic LLC (OVMC)

Case No. 21-SW-2075-DPR

**UNDER SEAL**

## AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, K. Michael Effland, being duly sworn, do state:

1. I make this affidavit in support of an application for a Seizure Warrant for the following property:

    a. Funds up to $296,574.04 in Great Southern Bank account number 3708044503, in the name of Ozark Valley Medical Clinic LLC (OVMC);

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have served in this capacity since May 2017. I am currently assigned to the Kansas City Division, Springfield, Missouri Resident Agency. My duties as a Special Agent include investigating criminal violations of Federal Law.

3. I am a graduate of the FBI's Basic Field Training Course where I received classroom and practical training. I graduated from The University of Texas with a Bachelor of Science degree in Mechanical Engineering in 2009. I have experience in conducting fraud investigations and have received training in the application and execution of seizure warrants. As part of my duties with the FBI, I investigate criminal violations relating to wire fraud, in violation of 18 U.S.C. § 1343.

4. The facts contained in this affidavit are based upon my own personal knowledge, observations, training and experience, investigation of this matter, information and facts related to me, other members of federal and local law enforcement; and what I have learned from the other sources specifically detailed herein. Because this affidavit is being submitted for the limited purpose of obtaining a seizure warrant, this affidavit does not contain every fact known to me concerning this investigation.

## I. STATUTORY FRAMEWORK

5. Title 18, United States Code, Section 1343, (wire fraud) criminalizes devising or intending to devise a scheme to defraud (or performing specific fraudulent acts) through the use of an interstate telephone call or electronic communication.

6. The proceeds of wire fraud are subject to forfeiture under both civil and criminal forfeiture authorities. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud or bank fraud is subject to civil forfeiture. Pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained from wire fraud or bank fraud is subject to criminal forfeiture.

7. This application seeks a seizure warrant under both civil and criminal authority because the property to be seized could be placed beyond process if not seized by warrant.

8. Pursuant to 18 U.S.C. § 981(b), property subject to civil forfeiture may be seized by a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action against the property may be filed," and may be executed "in any district in which the property is found," if there is probable cause to believe the property is subject to forfeiture. A civil forfeiture action may be brought in any district where "acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A). As detailed below, acts or omissions in furtherance of the

fraud scheme under investigation occurred in the Western District of Missouri. The criminal forfeiture statute, 18 U.S.C. § 982(b)(1), incorporates the procedures in 21 U.S.C. § 853 (other than subsection (d)) for a criminal forfeiture action. 21 U.S.C. § 853(f) provides authority for the issuance of a seizure warrant for property subject to criminal forfeiture.

9. The issuance of this seizure warrant is authorized under 21 U.S.C. § 853(f) and 18 U.S.C. § 982(b)(1) for criminal forfeiture; and 18 U.S.C. §§ 981(b) and 984 for civil forfeiture. Notwithstanding the provisions of Rule 41(b) of the Federal Rules of Criminal Procedure, the issuance of these seizure warrants in this district is appropriate under 18 U.S.C. § 981(b)(3), 21 U.S.C. § 853(l) and 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in the Western District of Missouri.

## II. BACKGROUND OF INVESTIGATION

### A. Patricia Derges

10. Patricia Ashton Derges ("DERGES") is an assistant physician licensed to practice by the State of Missouri under number ending in 2792 and was registered to prescribe controlled substances by the United States Drug Enforcement Administration (DEA) under number ending 9851. DERGES is a resident of Christian County within the Western District of Missouri.

11. DERGES is the owner of OVMC and the Founder, President, and Chief Executive Officer of Lift Up Someone Today, Inc. ("LIFT UP").

### B. Medical Clinics

12. DERGES organized OVMC as a member managed limited liability company under the laws of the State of Missouri on July 28, 2014. The registered agent was "Pat Ashton", an alias known to the affiant to be used by DERGES, and the first registered address was the home address of DERGES.

3

13. OVMC is a for-profit urgent care and walk-in medical clinic with three locations in southwest Missouri. From in or about 2014 to the present, DERGES has operated three OVMC locations: 3259 East Sunshine, Springfield, Greene County, Missouri; 5571 North 21st Street, Ozark, Christian County, Missouri, and 2715 West 76 Country Boulevard, Branson, Taney County, Missouri. OVMC's Federal Employer Identification Number (FEIN) ends in 4401.

14. DERGES incorporated LIFT UP as a Non-Profit Corporation under the laws of the state of Missouri on February 3, 2016. The registered agent was "Patricia A. Derges" and the registered address was 3259 East Sunshine St, Suite AA, Springfield, Missouri, known to the affiant to be the physical address of the OVMC Springfield location. LIFT UP was granted an exemption from federal income taxes under Internal Revenue Code Section 501(c)(3) on April 7, 2016, as a public charity. From in or about 2018, DERGES has operated LIFT UP's medical and dental clinics at 2005 East Kearney, Suite K, Springfield, Greene County, Missouri. LIFT UP's FEIN ends in 3560.

15. The "About" section of LIFT UP's Facebook page stated, "Lift Up Springfield is a Medical and Dental Mission clinic to provide basic health and dental services to the underserved of our community." For all time periods relevant to this affidavit, LIFT UP conducted business and provided medical care at 2005 E. Kearney, Suite K, Springfield, Missouri, located within Greene County.

C. **CARES Act and Greene County**

16. On March 13, 2020, President Donald J. Trump declared a national emergency in response to the global pandemic caused by SARS-CoV-2 (COVID-19).

4

17. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 27, 2020 and was designed to provide emergency assistance to the millions of Americans suffering due to the COVID-19 pandemic.

18. Under the CARES Act, States were allocated funding based upon a state's population relative to the total population of all States. Missouri was allocated approximately $2.3 billion. Missouri allocated CARES Act funds to local governments, including Greene County, Missouri. Missouri allocated Greene County, Missouri ("Greene County") approximately $34 million in CARES Act funds and wired approximately $34 million in CARES Act funds to Greene County on May 4, 2020.

19. To administer the CARES Act funds it received, Greene County created the CARES Act Relief Fund to "promote recovery by funding programs and services that support the needs of those impacted by the COVID-19 public health emergency." Greene County created an organizational structure for the CARES Act Relief Fund that prioritized payments that centered on "medical, public health, payroll, compliance with COVID-19 expenses, provisional support expenses, and other COVID-19 related expenses."

20. Greene County chose to subdivide the approximately $34 million into five separate categories: nonprofits, health care, small business, education, and tax supported entities (government). The nonprofit category was allocated $5 million to distribute. Further, approximately 10% of the approximately $34 million was held back as a "reserve."

21. To apply for CARES Act funding, an entity submitted an application through Greene County's website and designated which of the five categories was most applicable to the entity. As part of the application, the entity was required to provide a "statement of need" that was consistent with federal relief funding guidelines. A link to the United States Department of

5

Case 6:21-sw-02075-DPR   Document 1-1   Filed 03/24/21   Page 5 of 18

Treasury's guidance website was also provided by Greene County. Finally, an applicant was required to provide supporting documentation with their application.

22. To review the applications and determine which entities received relief funding, Greene County stood up a 30-member advisory council made up of volunteer community members. These 30 members were divided into five subcommittees: one for each category of funding. After the subcommittee reviewed the applications, they presented their recommendations to the 30-member council who then collectively determined which entities would be recommended to the County Commission. These recommendations were then reviewed by the County Commission who made a final determination. Before any funds were distributed, a vetting process was conducted by the County Auditor and Treasurer.

### III. SUMMARY OF EVIDENCE ESTABLISHING PROBABLE CAUSE

23. The investigation has revealed that DERGES made false statements in LIFT UP's application for CARES Act funding to fraudulently obtain $296,574.04 in federal funds being distributed by Greene County. If the Greene County advisory council had known the facts in the application were false, they would not have recommended these relief funds to be distributed to LIFT UP, and LIFT UP would not have received the funds.

24. DERGES' scheme to defraud Greene County was to apply for CARES Act funding on behalf of LIFT UP, a non-profit, and seek reimbursement for COVID-19 testing that she claimed LIFT UP had performed. At the time DERGES submitted Lift UP's application, she knew that LIFT UP had not performed COVID-19 testing and had not incurred the costs, or paid the expenses, for COVID-19 testing. Nonetheless, to support her request for CARES Act funds, DERGES submitted to Greene County Dynamic DNA Laboratory, Inc. ("Dynamic DNA") invoices for COVID-19 laboratory tests. The Dynamic DNA invoices were costs incurred by, and

6

expenses paid by, OVMC for COVID-19 tests that OVMC had provided to its patients for approximately $167 per test. Not only were these invoiced amounts not costs incurred by, or expenses paid by, LIFT UP, OVMC's patients had already paid OVMC approximately $167 per COVID-19 test.

25. On September 19, 2020, DERGES submitted an application for CARES Act funding to Greene County through their website portal. The application was made under the nonprofit category and it requested reimbursement for costs incurred by, and expenses paid by, LIFT UP. These expenses, among other things, included $304,189 in COVID-19 testing.

26. The application stated the organization applying was "Lift Up Someone Today," a 501(c)(3) entity with an address at 2005 E Kearney, Suite K, Springfield, Missouri. The description stated that LIFT UP "Provides medical, dental and mental health services to the homeless, impoverished and uninsured." The application also stated that "Tricia Derges" was the President/CEO.

27. As part of the application, DERGES positively acknowledged that "the funds [will] be used exclusively within the County." In this context, "the County" referred to Greene County. Provided with the application was a profit and loss statement for "Lift Up Someone Today" with an address of 3259 E. Sunshine St, Suite AA, Springfield, Missouri that had an expense titled "Laboratory" with an amount of $307,436. Written at the bottom of the profit and loss statement was "Prepared by Tricia Derges." Also provided with the application was the IRS letter dated April 7, 2016, noting LIFT UP's 501(c)(3) status, and a Form W-9 filled out and signed by DERGES on September 18, 2020, certifying that LIFT UP's employer identification number, with the last four digits being 3560 (the same FEIN number listed with the IRS), and that LIFT UP maintained an address of 3259 East Sunshine, Suite AA, Springfield, Missouri.

7

28. DERGES supported her claim that LIFT UP had spent $304,189.00 for "COVID testing" between March 2020 and September 2020 by submitting, along with LIFT UP's application, five (5) e-mails from Dynamic DNA to DERGES. The e-mails contained images of Dynamic DNA invoices for COVID-19 laboratory testing Dynamic DNA had done for OVMC. DERGES submitted the Dynamic DNA invoices as LIFT UP expenditures. The five (5) invoices were for the months of April, May, June, July, and August 2020, and totaled $296,574.04. The invoices were for 3,097 COVID-19 test samples collected by OVMC, and tested by Dynamic DNA for COVID-19, pursuant to OVMC's contract with Dynamic DNA. OVMC incurred the cost of the COVID-19 tests and OVMC paid Dynamic DNA the total invoiced amount of $296,574.04. At the time DERGES submitted LIFT UP's application seeking reimbursement for these COVID-19 tests from the CARES Act Relief Fund, OVMC clients, patients, or their patients' employers, had already paid OVMC approximately $517,000.00 for these COVID-19 tests.

29. Dynamic DNA is a genetics, microbiology, cellular, and microscopy laboratory located within Greene County, Missouri. A grand jury subpoena was served to Dynamic DNA Laboratories for records related to OVMC and/or LIFT UP. Numerous records were returned that revealed thousands of COVID-19 tests Dynamic DNA Laboratories had done for OVMC under a contract DERGES executed on behalf of OVMC. Dynamic DNA Laboratories had no business relationship with LIFT UP and had not performed any tests or work for LIFT UP, free or otherwise.

30. Beginning on or about April 6, 2020, OVMC contracted with Dynamic DNA to conduct COVID-19 laboratory tests of the samples OMVC collected from its patients. Pursuant to OVMC's contract with Dynamic DNA, Dynamic DNA charged OVMC $99.99 per sample test. On or about June 6, 2020, OVMC and Dynamic DNA amended their contract. Pursuant to an amendment, effective July 1, 2020, Dynamic DNA charged OVMC $94.99 per sample test.

8

31. Grand jury subpoenas were served to numerous financial institutions, including the bank where OVMC and LIFT UP held accounts. OVMC's account was held at Great Southern Bank ("GSB"), account 3708044503, styled "Ozark Valley Medical Clinic." LIFT UP's account was also held at GSB, account 3708045151, styled "Lift Up Someone Today." Notably, DERGES was the only authorized individual with signature authority on both clinic accounts. These financial records were reviewed, and it was discovered that payments were made from the OVMC account to Dynamic DNA Laboratories that exactly matched the amounts and dates of the five invoices submitted to Greene County under the LIFT UP application.

32. A review of LIFT UP's financial records failed to identify any payments to Dynamic DNA Laboratories for COVID-19 testing, or any other service.

33. Two different employees of OVMC, who were familiar with both OVMC and LIFT UP practices, were interviewed. Both stated that no COVID-19 testing had been performed or offered at LIFT UP, but that all three OVMC locations offered COVID-19 testing. An employee who worked at the OVMC Ozark location stated OVMC charged $167 per COVID-19 test.

34. An individual who was employed by OVMC, and volunteered at LIFT UP, through April of 2020 was interviewed. This individual stated that LIFT UP was closed and not operating during the first few months of the pandemic.

35. The affiant has reviewed publicly available posts on LIFT UP's Facebook page. On May 6, 2020, LIFT UP posted "Thank you so much for your patience in working with us by using telemedicine and email for your needs and only requesting to be seen if you had an emergency during this past stay at home period. We are excited to start to reopen the clinic."

36. On June 12, 2020, LIFT UP posted "We are SO EXCITED TO BE BACK!!!!...It was truly a great day today to be back doing the things we love!"

9

37. The affiant has reviewed all publicly available posts by both OVMC and LIFT UP Facebook accounts during the year 2020. Although OVMC has advertised COVID-19 testing availability, there were no such posts on the LIFT UP page.

38. Numerous individuals who received COVID-19 testing at OVMC were interviewed. Each one interviewed stated they paid approximately $167 for their COVID-19 test. Further, financial analysis of OVMC'S bank account shows that, starting at the beginning of the pandemic and continuing through 2020, OVMC began receiving a significant number of deposits for $167. Many of these deposits are in the form of checks. Some of these checks have "COVID Testing", or a variation thereof, written on the memo line.

39. Two large employers in the Springfield, Missouri area were interviewed. Both had agreements with OVMC to test their employees for COVID-19 and both employers paid OVMC $167 per test.

## FINANCIAL ANALYSIS

### Great Southern Bank Account Number 3708045151 (LIFT UP)

40. Records obtained from GSB show DERGES, as the sole individual having signature authority, opened LIFT UP bank account 3708045151 at GSB on July 7, 2015. The account signature card lists the address of 3259 E Sunshine St, Suite AA, Springfield, Missouri 65804. GSB statements from the period of July 2015 through February 2021 were reviewed. No payments to Dynamic DNA Laboratories were found.

### Great Southern Bank Account Number 3708044503 (OVMC)

41. Records obtained from GSB show DERGES, as the sole individual having signature authority, opened OVMC bank account 3708044503 at GSB on August 13, 2013. The account signature card lists the address of 6809 State Highway 14, Ste A, Clever, Missouri 65631.

10

42. A review of GSB bank records for account 3708044503 of OVMC revealed the following activity:

    a. Statement periods from August 13, 2014, to March 31, 2020, show a maximum daily balance of $33,510.33. Over this time period the average monthly deposit total was $20,134.75 and the average monthly withdrawal total was $19,824.80.

    b. Statement period from April 1, 2020 to April 30, 2020, the beginning balance was $9,242.11 and the ending balance was $16,828.29. During this period, deposits totaled $62,582.77 and withdrawals totaled $66,830.72.

    c. Statement period from May 1, 2020, to May 29, 2020, the beginning balance was $26,556.99, and the ending balance was $52,322.52. During this period, deposits totaled $113,153.00 and withdrawals totaled $77,659.31. Withdrawals included a $5,299.47 electronic transfer to Dynamic DNA Labs on May 4, 2020.

    d. Statement period from June 1, 2020, to June 30, 2020, the beginning balance was $60,422.29, and the ending balance was $82,345.48. During this period, deposits totaled $111,345.16 and withdrawals totaled $81,322.20. Withdrawals included a $14,698.53 electronic transfer to Dynamic DNA Labs on June 22, 2020.

    e. Statement period from July 1, 2020, to July 31, 2020, the beginning balance was $95,995.15, and the ending balance was $221,145.14. During this period, deposits totaled $250,424.33 and withdrawals totaled $111,624.67. Withdrawals included a $29,697.03 electronic transfer to Dynamic DNA Labs on July 17, 2020.

    f. Statement period from August 3, 2020, to August 31, 2020, the beginning balance was $237,371.89, and the ending balance was $249,930.56. During this period, deposits totaled $235,476.59 and withdrawals totaled $206,691.17. Withdrawals

included three electronic transfers to Dynamic DNA Labs on August 18, 2020, totaling $109,618.46.

g. Statement period from September 1, 2020, to September 30, 2020, the beginning balance was $244,620.92, and the ending balance was $207,908.38. During this period, deposits totaled $233,375.70 and withdrawals totaled $275,397.88. Withdrawals included three electronic transfers to Dynamic DNA Labs on September 24, 2020, totaling $137,260.55.

h. Statement period from October 1, 2020, to October 30, 2020, the beginning balance was $244,183.56, and the ending balance was $334,792.01. During this period, deposits totaled $206,533.14 and withdrawals totaled $79,649.51.

i. Statement period from November 2, 2020, to November 30, 2020, the beginning balance was $226,108.89, and the ending balance was $335,706.29. During this period, deposits totaled $194,380.84 and withdrawals totaled $193,466.56. Withdrawals included three electronic transfers to Dynamic DNA Labs on November 2, 2020, totaling $104,109.04.

j. Statement period from December 1, 2020, to December 31, 2020, the beginning balance was $356,414.09, and the ending balance was $308,502.81. During this period, deposits totaled $190,805.09 and withdrawals totaled $218,008.57. Withdrawals included two electronic transfers to Dynamic DNA Labs on December 2, 2020, totaling $94,040.10.

k. Statement period from January 1, 2021, to January 29, 2021, the beginning balance was $308,502.81, and the ending balance was $225,352.36. During this period, deposits totaled $109,146.78 and withdrawals totaled $192,297.23. Withdrawals

included two electronic transfers to Dynamic DNA Labs on January 2, 2021, totaling $94,420.06.

l. Statement period from February 1, 2021, to February 26, 2021, the beginning balance was $234,201.35, and the ending balance was $380,891.87. During this period, deposits totaled $389,973.70 and withdrawals totaled $234,434.19. Withdrawals included two electronic transfers to Dynamic DNA Labs on February 5, 2021, totaling $85,491.00. Deposits included an electronic transfer from LIFT UP'S account in the amount of $298,024.04 on February 22, 2021.

**GREENE COUNTY AWARDS LIFT UP CARES ACT FUNDS**

43. On September 30, 2020, based upon the representations DERGES made in LIFT UP's application and supporting documentation, the Greene County COVID Relief Fund's Non-Profit Subcommittee recommended to the Greene County Commission that LIFT UP be awarded CARES Act funds.

44. On December 3, 2020, L.F., on behalf of Greene County, sent DERGES an e-mail in which L.F. requested further documentation for LIFT UP's COVID-19 expenditures.

45. On December 4, 2020, DERGES responded by e-mail and provided Greene County (8) eight invoices, as attachments, to further support LIFT UP's COVID-19 testing expenditures. In the e-mail, DERGES identified the eight (8) attached invoices as "the COVID testing invoices" for COVID-19 testing purported to have been conducted by LIFT UP. The (8) eight invoices were from Dynamic DNA and included three (3) Dynamic DNA invoices for September, October, and November 2020, in addition to the previously submitted invoices for April, May, June, July, and August 2020. The invoices were for 6,177 COVID-19 test samples collected by OVMC and tested by Dynamic DNA for COVID-19, pursuant to OVMC's contract with Dynamic DNA. OVMC

incurred the expense of the COVID-19 tests, and OVMC paid Dynamic DNA the total invoiced amount of $589,143.24. OVMC clients, patients, or their patients' employers paid OVMC approximately $1 million for these COVID-19 tests. In DERGES' December 4, 2020, e-mail to Greene County, DERGES wrote, "…the majority of every day: our staff literally spends testing," and "We would just be thrilled to get what help we could on the testing." DERGES concealed from Greene County that these COVID-19 tests had already been paid for by other payors.

46. Based upon the Non-Profit Subcommittee's recommendation and DERGES' application on behalf of LIFT UP, including the documentation DERGES submitted in support of LIFT UP's application, the Greene County Commission awarded LIFT UP CARES Act funds from the Greene County CARES Act Relief Fund. The Greene County Commission awarded LIFT UP $296,574.04, in reimbursement for COVID-19 testing based upon the Dynamic DNA invoices DERGES submitted on LIFT UP's behalf for April, May, June, July, and August 2020.

47. On December 21, 2020, Greene County Senior Deputy Auditor, A.C., notified DERGES by e-mail that the Greene County Commission had approved LIFT UP's CARES Act award. A.C. attached LIFT UP's Award Letter and LIFT UP's Subrecipient Award contract to the same e-mail.

48. In the Award Letter, Greene County notified DERGES that LIFT UP's application to the "CARES Act Non-Profit and Community Organizations Grant program" had been approved. Specifically, the Award Letter stated that LIFT UP was awarded $296,574.04 in "qualified reimbursable expenses" for "Covid Testing." DERGES signed LIFT UP's Subrecipient Award contract and returned the same to Greene County by e-mail attachment on December 21, 2020.

49. DERGES e-mailed Greene County Senior Deputy Auditor, A.C. on December 21, 2020, and wrote, "I did want to be sure than when [the check] is sent: that it is sent to the business

14

office at 3259 E. Sunshine, Suite AA, Springfield, MO 65804 and NOT the physical address on Kearney St."

50.   On December 23, 2020, Greene County sent LIFT UP a check by mail through the United States Postal Service in the amount of $296,574.04, to LIFT UP at 3259 East Sunshine, Suite AA, Springfield, Missouri. The check, number 253463, was payable to "Lift Up Someone Today," through Greene County's UMB Bank account, ending in 1931.

51.   The affiant has interviewed members of Greene County's advisory council and other individuals in the Greene County Administration involved in awarding LIFT UP CARES Act funding. Every person interviewed understood the application to be asserting that LIFT UP, a non-profit organization, provided, and paid for, COVID-19 testing to the homeless and other disadvantaged individuals in Greene County. DERGES and LIFT UP had received significant local news coverage for their philanthropic work over the previous years and several members of the subcommittee were familiar with the clientele LIFT UP served. Further, Greene County personnel understood that LIFT UP was seeking reimbursement for the laboratory fees incurred, and expenses paid, for this testing as the patients being tested did not pay for it themselves. Members of the advisory council stated that if 1) the individuals tested had not resided in Greene County, or 2) the individuals tested paid for the testing, LIFT UP would not have been awarded the funding. None of the Greene County advisory council members or Greene County Administration personnel that the affiant interviewed knew that OVMC, and not LIFT UP, had provided the COVID-19 testing; nor did they know that OVMC patients had already paid OVMC for the COVID-19 tests for which DERGES sought reimbursement from the Greene County CARES Act Relief Fund.

## TRACING THE CARES ACT FUNDS

52. DERGES deposited LIFT UP's CARES Act funds check, number 253463, written against Greene County's UMB bank account ending 1931, into LIFT UP's account at GSB, account 3708045151, on December 29, 2020. The funds were debited against Greene County's UMB bank account, ending 1931, on December 31, 2020.

53. On February 22, 2021, DERGES transferred $298,024.04 from LIFT UP's GSB account, number 3708045151 to OVMC'S GSB account, number 3708044503. This amount was debited from LIFT UP'S GSB account and credited to OVMC'S GSB account simultaneously.

## TRACING AND THE LOWEST INTERMEDIATE BALANCE THEORY

54. Your Affiant is further advised that another theory of forfeiture allows the Government to forfeit funds and assets actually traceable to the wrongdoing. When tracing forfeitable funds through a bank account, the Government may use any generally accepted accounting method, including "first in, first out" or "first in, last out," but the Government will always be constrained by the lowest intermediate balance principle. *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1158-62 (2d Cir. 1986); *United States v. $88,029.08, More or Less, in U.S. Currency*, 2012 WL 4499084, *5 (S.D. W. Va. Sept. 28, 2012) (applying the lowest intermediate balance rule to grant summary judgment as to the forfeitability of drug proceeds in a commingled bank account). The lowest intermediate balance rule means that the amount of forfeitable funds on the date of the seizure may not exceed the lowest intermediate balance in the account between the date of the deposit of the allegedly forfeitable funds and the date of the seizure where the Government is relying on an actual tracing analysis, as opposed to relying on 18 U.S.C. § 984 for seizure based on fungibility. In the tracing analysis set forth below as to LIFT UP's GSB bank account, number 3708045151, the Government has identified the lowest intermediate balance

16

between the time of the deposit of the illicit funds and the date of the seizure, and is limiting its seizure request to no more than that amount.

55. A review of LIFT UP's GSB bank account records, account number 3708045151, revealed the following activity:

   a. Statement periods from December 1, 2020, to December 29, 2020, show a beginning balance of $16,332.35 and the ending balance was $408,186.63. During this period, deposits totaled $399,921.04 and withdrawals totaled $8,066.76. Deposits included a $100,000 deposit on December 16, 2020, and a $298,024.04 deposit on December 29, 2020. This last deposit contained the $296,574.04 check that is the subject of this affidavit.

   b. Statement period from January 1, 2021, to January 27, 2021, the beginning balance was $408,186.63, and the ending balance was $399,423.09. During this period, deposits totaled $3,292.00 and withdrawals totaled $12,055.54.

   c. Statement period from February 1, 2021, to February 25, 2021, the beginning balance was $399,417.14, and the ending balance was $91,586.90. During this period, deposits totaled $1,811.29 and withdrawals totaled $309,647.48.

   d. Between the $298,024.04 deposit on December 29, 2020, and the $298,024.04 transfer to OVMC's GSB bank account, account number 3708044503, on February 22, 2021, the lowest account balance was $390,154.34 on February 18, 2021.

## **CONCLUSION**

56. Based on the information set forth in this affidavit, there is probable cause to believe DERGES committed Wire Fraud in violation of 18 U.S.C. § 1343. DERGES' scheme to defraud Greene County was to apply for CARES Act funds on behalf of her non-profit, LIFT UP, in order

17

to obtain reimbursement for COVID-19 tests that were actually rendered by her for-profit, OVMC. Further, OVMC had already been paid for the COVID-19 tests by OVMC's clients, patients, or the patients' employers. There is probable cause to believe property involved in the wire transactions detailed in the affidavit is subject to civil and criminal forfeiture pursuant to 18 U.S.C. §§ 981 and 982.

## **REQUEST TO SEAL SEIZURE DOCUMENTS**

57. It is requested that the Court order all papers in support of this application, including the affidavit and seizure warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to the target of the investigation. Additionally, these documents contain personally identifiable financial information. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation as well as disclose personally identifiable financial information.

K. Michael Effland
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me by telephone or other reliable electronic means the 24th day of March, 2021.

David P. Rush
Chief United States Magistrate Judge